UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CHRISTOPHER LACCINOLE, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| v. | ) C.A. No. 1:20-CV-00312-MSM-LDA <br> ) |
| RAUSCH, STURM, ISRAEL, <br> ENERSON & HORNIK LLP, | ) <br> ) <br> ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is another of the plaintiff, Christopher Laccinole's, many lawsuits in this district wherein he alleges violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and a plethora of state-law claims.

The defendant, Rausch, Sturm, Israel, Enerson & Hornik LLP ("RSIEH"), is a Wisconsin law firm that engages in debt collection. From May 6 to June 27, 2020, RSIEH made twelve to eighteen telephone calls to Mr. Laccinole's cellular telephone.[1] (ECF No. 49-1 at 6; ECF No. 29 ¶ 54.) RSIEH, however, was not attempting to reach Mr. Laccinole and had no accounts associated with him. Instead, RSIEH was attempting to contact a third party, a debtor with apparently no relation to Mr. Laccinole, that the Court will identify by her initials: M.T.

---

[1] The parties dispute the exact number of calls, but the Court finds that the difference of six calls is not material.

1

Mr. Laccinole provided the Court with audio recordings of ten of the telephone calls that RSIEH made to him; that is, other than missed calls. (ECF No. 29, Enclosure 5.) Some calls are a disconnection, seemingly on RSIEH's end, before Mr. Laccinole speaks with anyone; in others the caller asks for M.T. In response, Mr. Laccinole asks what company the caller is calling from and then the call is discontinued, but Mr. Laccinole continues the recording to log information about the time of the call, the identity of the caller, etc. In no call does he inform the caller that he or she had reached the wrong person or to stop calling. He did, however, provide RSIEH with a letter, dated May 6, 2020, disputing any debt, and asking RSIEH to stop calling him. (ECF No. 56-3.)

Further facts are discussed below, as necessary.

## DISCUSSION

### I.   Mr. Laccinole's Motion to Strike (ECF No. 52)

Mr. Laccinole seeks to strike Exhibits 1 and 2 submitted by RSIEH in support of its Motion for Summary Judgment. The Court finds no basis to strike these exhibits.

First, Mr. Laccinole seeks to strike the affidavit and attached exhibits of Elizabeth Garcia, which he argues was not disclosed in discovery and improperly provides expert opinion. Ms. Garcia is the general counsel of RSIEH and states that she has knowledge of the telephone system and of other facts relevant to this case. She then sets forth those facts. Nothing in her affidavit qualifies as expert opinion testimony. As far as any failure to disclose, Mr. Laccinole had an opportunity to

depose Ms. Garcia when discovery was reopened at his request after RSIEH's initial filing of her affidavit and attached exhibits.[2]  Moreover, Mr. Laccinole knew of Ms. Garcia since before the filing of the Complaint, identifying her in that pleading as a "senior attorney" of RSIEH.  (ECF No. 49-2 ¶ 62.)

Next, Mr. Laccinole seeks to strike the copy of his Complaint attached to the RSIEH's Motion because it includes only the Complaint itself and not the exhibits he had attached to his Complaint.  First, the Court has a copy of the Complaint with all exhibits, received when the matter was removed from state court.  (ECF No. 4.) Further, a review of RSIEH's filing indicates that it attached the Complaint because it is the relevant portion of that document for purposes of its Motion—it includes the specific propositions referenced in RSIEH's memorandum in support of that Motion. If the plaintiff believes that the exhibits he attached to the Complaint are relevant to the specific issues before the Court on RSIEH's Motion for Summary Judgment, he should include them and address them in his response to that Motion.

## II.     Mr. Laccinole's Motion to Amend (ECF Nos. 56 & 57)

Mr. Laccinole seeks to amend his complaint, at this late juncture, to add a party: Portfolio Recovery Associates ("PRA").  Under Rule 15 of the Federal Rules of Civil Procedure, "leave to amend is 'freely given when justice so requires.'" *Palmer v. Champion Mortgage*, 465 F.3d 24, 30 (1st Cir. 2006).  But "[w]hile the rule reflects a

---

[2] RSIEH originally filed a motion for summary judgment, with Ms. Garcia's affidavit attached, on December 3, 2021.  In response, Mr. Laccinole requested time for additional discovery under Fed. R. Civ. P. 56(d).  The Court granted that request on a limited basis and denied RSIEH's motion without prejudice to refiling after the completion of discovery.

3

liberal amendment policy ... the district court enjoys significant latitude in deciding whether to grant leave to amend." *Kader v. Sarepta Therapeutics, Inc.*, 887 F.3d 48, 60-61 (1st Cir. 2018). A court may deny a motion to amend where there has been "undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of amendment." *Id.* at 60.

The affidavit of Elizabeth Garcia provided that on December 19, 2018, PRA placed the account of the third-party debtor, M.T., with RSEIH for collection. (ECF No. 49-1 ¶ 8.) PRA is no stranger to Mr. Laccinole for matters outside of this case as he states he has received from PRA over 300 robocalls over the last three years and he has sent it over 100 certified letters asking it to stop. But the calls that gave rise to this case are the 12-18 calls RSIEH made to Mr. Laccinole from May 6, 2020, to June 27, 2020. Mr. Laccinole does not assert or provide any evidence that PRA directly made any of those calls. If Mr. Laccinole has a claim against PRA for any of the hundreds of calls he allegedly received from them in the past that is a separate matter. And it is for that reason that the Court finds that an amendment at this late stage would unduly prejudice RSIEH who has litigated the specific claims against it for over two years and is on the precipice of summary judgment.

But there is also the issue of undue delay and dilatory motive. *See Acosta-Mestre v. Hilton Int'l of P.R., Inc.*, 156 F.3d 49, 52 (1st Cir. 1998) (holding that undue delay, standing alone, is enough to deny a plaintiff's motion to amend after the deadline in the scheduling order has passed). Mr. Laccinole claims that he only

4

learned of a connection to PRA when RSIEH filed its original Motion for Summary Judgment, on December 3, 2021, because the affidavit of Elizabeth Garcia noted that M.T.'s account came from PRA. Discovery was reopened, at his request, though limited to discovery on the issue of whether RSIEH used an automatic telephone dialing system. In that time, he sought to subpoena PRA, but that subpoena was quashed because it sought private financial information of a third party—M.T.—and was outside the scope of the discovery order. Yet never did he seek to add PRA to this case until after the period of extended discovery expired and after RSIEH filed its renewed Motion for Summary Judgment.[3] The timing—almost eight months after his supposed discovery of PRA's connection to the RSIEH—is glaring, and despite his claims to have valid reasons for delay, the Court finds this proposed amendment an undue effort to extend the case against RSIEH unnecessarily.

### III.  RSIEH's Motion for Summary Judgment (ECF No. 49)

Summary judgment's role in civil litigation is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Garside v. Osco Drug. Inc.,* 895 F.2d 46, 50 (1st Cir. 1990). Summary judgment can be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.

---

[3] Although Mr. Laccinole is *pro se*, he has been self-represented in "hundreds" of lawsuits since at least 2014, "is a very sophisticated *pro se* Plaintiff," and any "reliance on his status as a *pro se* litigant falls flat." *See Laccinole v. Int'l Union of Police Ass'ns AFL-CIO,* 1:21-cv-240-JJM, 2022 WL 14812545, at *2 (D.R.I. Oct. 26, 2022) (citing *Laccinole v. Assad,* C.A. No. 14-404 S, 2016 WL 868511, at *9 (D.R.I. Mar. 7, 2016)).

R. Civ. P. 56. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir. 2000).

### A. Standing

RSIEH argues an issue this Court already has considered: that Mr. Laccinole does not have standing to press his claims under the TCPA and FDCPA. The Court rejected this issue when Mr. Laccinole raised it by way of a motion to remand to state court and the Court need not delve into it again. Despite RSIEH's assertion that Mr. Laccinole did not claim an injury in fact from the alleged TCPA and FDCPA violations, Mr. Laccinole indeed has pled damages with respect to those claims in his Complaint. The Court will instead proceed to the merits.

### B. The Telephone Consumer Protection Act

Mr. Laccinole alleges in Count I of his Complaint that RSIEH violated the TCPA by using an automatic telephone dialing system ("ATDS") to call his cellular telephone without his consent.

The TCPA regulates the making of "any call (other than a call … made with the prior express consent of the called party) using any automatic telephone dialing system … (iii) to any number assigned to a … cellular telephone service …." 47 U.S.C. § 227(b)(1)(A)(iii). "Automatic telephone dialing system" means "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a

6

random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). "To qualify as an 'automatic telephone dialing system,' a device must have the capacity to either store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

It is undisputed that RSIEH made the calls at issue to a cellular telephone and without Mr. Laccinole's consent. This issue is whether they were done so with an ATDS.

All RSIEH's calls to Mr. Laccinole were made with a LiveVox outbound dialing system called the Human Call Initiator ("HCI"). (ECF No. 53 at 12, 16.) Every call from HCI requires human intervention in the form of a "clicker agent" clicking on a dialogue box to confirm the launching of a call to each telephone number. *Id.* at 13. HCI does not have the capacity to autodial, it does not have any features that permit autodialing, and there are no features in HCI that can be turned on to enable autodialing. *Id.* at 14. Further, HCI does not have the capacity to produce or store numbers to be called using a random or sequential number generator and nor does it have the capacity to generate random ten-digit phone numbers and then to dial them. *Id.* at 15. HCI does not use a random or sequential number generator to perform any function whatsoever and does not use a random or sequential number generator to determine the order in which to make phone calls from an existing list of phone numbers. *Id.* at 16.

Mr. Laccinole has offered none of his own evidence regarding the RSIEH telephone system despite his attestation that if the Court reopened discovery on this issue—which it did—he would "immediately engage a national expert on telephone dialing systems to conduct a detailed analysis of [RSIEH's] calling system." (ECF No. 29 ¶ 135.) Thus, the undisputed evidence regarding the LiveVox HCI system used in this case satisfies the test set forth in *Duguid*, 141 S. Ct. at 1167, to establish that it was not an ATDS.

Instead, Mr. Laccinole argues that other district courts have held that the LiveVox systems in those cases were ATDS. First, none of these cases are binding upon this Court. In any event, most of those cases considered LiveVox systems other than the HCI system. *See Carl v. First Nat'l Bank of Omaha*, 2:19-cv-00504-GZS, 2021 WL 2444162, at *3 (D. Me. June 15, 2021) (granting summary judgment to the defendant on the issue of consent but stating, in dicta, that the there was a question of fact whether a non-HCI LiveVox system was an ATDS); *Williams v. Schanck*, 5:15-cv-01434-MHH, 2021 WL 2555290, at *2-3 (N.D. Ala. June 22, 2021) (holding that a LiveVox system different than HCI was an ATDS); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 221-26 (D. Mass. 2014) (same). In another, the court first denied summary judgment but, upon reconsideration, held that the LiveVox system was not an ATDS. *Friend v. Taylor Law, PLLC*, 2021 WL 5015096, at *2 (N.D. Ind. Oct. 27, 2021). The lone exception is *Kuch v. PHH Mortgage Corp.*, 16-cv-000056-LJV-LGF, 2021 WL 6424638, at *5 (W.D.N.Y. Sept. 1., 2021), where in a report and

recommendation the magistrate judge recommended granting summary judgment on the issue of consent and denying it on the ATDS issue.

On the other hand, courts that have specifically considered the LiveVox HCI system have determined that it was not an ATDS and, while also not binding, these cases are more persuasive. *See, e.g., Meier v. Allied Interstate LLC*, No. 20-55286, 2022 WL 171993, at *2 (9th Cir. Jan. 19, 2022); *Mercadel v. Allied Interstate, LLC*, No. 19-cv-2641-CC-JSA, 2020 WL 10224010, at *4 (N.D. Ga. May 5, 2020), *adopted* 2020 WL 10224373 (N.D. Ga. May 29, 2020); *Virnig v. TD Bank USA, N.A.*, No. 18-cv-824, 2020 WL 9720199, at *2 (W.D. Ky. Aug. 14, 2020); *Hautey v. IC Sys., Inc.*, 1:16-cv-12542-DPW, 2018 WL 5982020 (D. Mass. Nov. 14, 2018); *Collins v. Nat'l Student Loan Program*, 360 F. Supp. 3d 268, 273 (D.N.J. 2018); *Arora v. Transworld Sys. Inc.*, No. 15-cv-4941, 2017 WL 3620742, at *3 (N.D. Ill. Aug. 23, 2017); *Pozo v. Stellar Recovery Collection Agency, Inc.*, No. 15-cv-929-T-AEP, 2016 WL 7851415, at *4 (M.D. Fl. Sept. 2, 2016).

In Count II, Mr. Laccinole seeks to recover under § 227(c)(5) of the TCPA and its implementing regulations. Section 227(c)(5) offers a private right of action to "[a] person who has received more than one telephone call within any 12- month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection." "[T]his subsection refers to subsection (c), titled 'Protection of Subscriber Privacy Rights,' in which Congress ordered the FCC to initiate a rulemaking to protect 'residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). The TCPA defines "telephone

9

solicitation" to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person ...." 47 U.S.C. § 227(a)(4). The telephone calls that give rise to this action did not include anything from that statutory list. (ECF No. 49-1 ¶ 22-23.) Instead, the calls were made in an attempt to collect a debt owed by someone other than Mr. Laccinole. *Id.* ¶ 20. "[C]alls solely for the purpose of debt collection are not telephone solicitations and do not constitute telemarketing. Therefore, calls regarding debt collection or to recover payments are not subject to the TCPA's separate restrictions on 'telephone solicitations.'" In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd. 559, 565, ¶ 11 (Jan. 4, 2008).

Here, RSIEH was attempting to contact a third-party, M.T., with respect to a debt and therefore § 227(c)(5) does not apply. (ECF No. 49-1 ¶ 20.)

### C. Rhode Island Deceptive Trade Practices Act

To invoke the protection of the Rhode Island Deceptive Trade Practices Act ("DTPA"), 'a plaintiff must establish that he or she is a consumer[.]'" *Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499, 506 (D.R.I. 2020) (quoting *Kelley v. Cowesett Hills Associates*, 768 A.2d 425, 431 (R.I. 2001)). While "consumer" is not defined in the DTPA, the Rhode Island General Assembly has directed that courts construe the statute with deference to the "interpretations of the Federal Trade Commission and the federal courts related to § 5(a) of the Federal Trade Commission Act." R.I.G.L. § 6-13.1-3. This Court will apply a "commonsense understanding of the word that

10

encompassed activities like purchasing and utilizing commercial goods or services." *Appriss, Inc.*, 453 F. Supp. 3d at 506.

The evidence presented demonstrates that Mr. Laccinole cannot sustain his DTPA claim (Count III) because he did not engage in a consumer-vendor relationship with RSIEH. At most, he received unwanted calls to his cellphone number from RSIEH who was seeking to connect with a different person. Never was there any purchase of goods or services between the parties or even an offer to purchase goods or provide services.

### D. Rhode Island Right to Privacy

In Count IV, Mr. Laccinole claims that RSIEH's calls to him violated his right to privacy under R.I.G.L. § 9-1-28.1. "In passing 9-1-28.1, the [Rhode Island] Legislature explicitly afforded protection to the four interests encompassed within the common law tort' recognized by the Restatement (Second) of Torts, one of which is intrusion upon seclusion." *Appriss, Inc.*, 453 F. Supp. 3d at 507 (internal quotations omitted). "The Restatement indicates that repeated unwanted telephone calls may constitute unreasonable intrusions upon seclusion." *Id.* There is no liability, however, "unless the interference with the plaintiff's seclusion is a substantial one, of a kind that would be highly offensive to the ordinary reasonable man, as the result of conduct to which the reasonable man would strongly object … It is only when the telephone calls are repeated with such persistence and frequency as to amount to a course of hounding the plaintiff, that becomes a substantial burden to his existence, that his privacy is invaded." Restatement (Second) of Torts § 652B cmt. d.

11

Here, even considering the facts in the light most favorable to Mr. Laccinole, the undisputed evidence demonstrates that a reasonable jury could not conclude that RSIEH's calls meet this rather heavy burden. *See Rodi v. S. New Eng. Sch. of Law,* 532 F.3d 11, 15 (1st Cir. 2008) (explaining that summary judgement is appropriate if no reasonable jury could find for the non-movant, even on an issue that is "ordinarily a question of fact for the jury" under state law). RSIEH placed at most eighteen calls over the course of two months. In none of those calls, per the audio recordings that he provided, did Mr. Laccinole inform the caller that they had reached the wrong person or ask that they stop calling. Instead, he confirmed the caller's company, to support this eventual lawsuit.[4] This evinces a dearth of evidence of "highly offensive" behavior that was a "substantial burden" to Mr. Laccinole's existence. *See* Restatement (Second) of Torts § 652B cmt. d.

### E. Fair Debt Collection Practices Act

In Count V of his Complaint, Mr. Laccinole alleges violation of 15 U.S.C. § 1692d of the FDCPA, which prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." This includes "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with

---

[4] This would be consistent with Mr. Laccinole's admissions in other cases regarding his activities. *See Laccinole v. Int'l Union of Police Ass'ns AFL-CIO,* 1:21-cv-240-JJM, 2022 WL 14812545, *4 (D.R.I. Oct. 26, 2022) ("[Mr. Laccinole] records any calls that come in on the burner phones and admitted that he does so to create evidence to support his TCPA lawsuits…"); *Laccinole v. Students for Life Action Inc.,* 1: 21-cv—252-WES, 2022 WL 3099211, at * 2 (D.R.I. Aug. 4, 2022) (Mr. Laccinole invites calls to support his lawsuits).

intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5). Although a caller's intent if often a question for a jury, summary judgment is appropriate "where the volume and pattern of calls demonstrates an intent to contact debtors rather than an intent to annoy, abuse, or harass them." *Ashlund v. I.C. Sys.*, No. 3:17cv65 (JBA), 2018 WL 3448163, at *4 (D. Conn. July 17, 2018).

Here, the only reasonable conclusion from the evidence is that RSIEH attempted to contact a third-party debtor, not harass Mr. Laccinole. The lack of harassment is evidenced by the number of calls made over a two-month period with none during unusual hours. It is further buttressed with the fact that the callers asked for M.T. and Mr. Laccinole never informed them they had the wrong number or asked that they stop calling. Nor do any of the recordings indicate aggressive behavior on the part of RSIEH.

Next, in Count VI, Mr. Laccinole alleges violation of 15 U.S.C. § 1692c, a provision that regulates communication between a debt collector and a "consumer." The FDCPA defines the term "consumer" as "any natural person obligated or allegedly obligated to pay a debt," 15 U.S.C. § 1692a(3), and is expanded for purposes of §1692c to include "the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator," § 1692c(d).

Here, the evidence demonstrates that RSIEH never alleged that Mr. Laccinole owed a debt and was, in fact, looking for someone else. Mr. Laccinole confirms in his affidavit that "I don't owe Rausch, Sturm, Israel, Enerson & Hornik LLP any money." (ECF No. 29 ¶ 14.) He is therefore not a "consumer" and § 1692c does not apply.

13

The subject of Count VII, 15 U.S.C. § 1692e, sets forth prohibitions on a debt collector's false or misleading representations and is not entirely restricted to consumers, as in some subsections it refers to "any person." Nevertheless, Mr. Laccinole provides no evidence that RSIEH made any false or misleading representation to him. Indeed, a review of the audio files of the calls that he submitted demonstrates no such misrepresentations. (ECF No. 29 at Enclosure 5.)

Similarly, Mr. Laccinole's claim under § 1692f (Count VIII), the FDCPA provision precluding unfair practices, fails because there is simply no evidence of such actions on the part of RSIEH.

Finally, Mr. Laccinole alleges violation of § 1692g (Count IX). But this section applies only to consumers and, as noted above, Mr. Laccinole has presented no evidence he is a "consumer" in the context of this case.

Mr. Laccinole's claims under the Rhode Island Fair Debt Collection Practices Act (Counts X, XI, XII, XIII, and XIV) fail for the same reasons as his claims brought under the federal cognate.

### F. Other Claims

Mr. Laccinole does not substantively oppose RSIEH's Motion on each of his claims under Wisconsin law (Counts XV, XVI, XVII, and XVIII), his prayer for a declaratory judgment (Count XIX), his claim for civil liability for crimes and offenses (Count XX), or his claim for civil liability under the Racketeering Influenced and Corrupt Organization Act (Count XXI), and so the Court grants summary judgment on those claims as well.

## CONCLUSION

For the foregoing reasons, the Court:

- DENIES Mr. Laccinole's Motion to Strike (ECF No. 52);

- DENIES Mr. Laccinole's Motion for Leave to Amend Complaint (ECF No. 56) and Amended Motion for Leave to Amend Complaint (ECF No. 57); and

- GRANTS RSIEH's Motion for Summary Judgment (ECF No. 49).

IT IS SO ORDERED

_____
Mary S. McElroy
United States District Judge

November 15, 2022